**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN CURTIS JENKINS,**

                    **Plaintiff,**                    1:13-cv-1035
                                                                 (GLS/TWD)

                v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social Security,

                    **Defendant.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Binder, Binder Law Firm              CHARLES E. BINDER, ESQ.
60 East 42nd Street
Suite 520
New York, NY 10165

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    SANDRA M. GROSSFELD
United States Attorney              Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

## I. Introduction

Plaintiff John Curtis Jenkins challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Jenkins' arguments, the court affirms the Commissioner's decision and dismisses Jenkins' complaint.

## II. Background

On October 19, 2011, Jenkins filed an application for DIB under the Social Security Act ("the Act"), alleging disability since April 6, 2009. (Tr.[1] at 74, 127-28.) After his application was denied, (*id.* at 75-80), Jenkins requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 84-85). A hearing was held on December 4, 2012. (*Id.* at 47-73.) On January 15, 2013, the ALJ issued a decision denying the requested benefits, (*id.* at 25-46), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-5).

Jenkins commenced the present action by filing his complaint on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 6.)

August 23, 2013, wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 5, 6.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 14.)

### III. Contentions

Jenkins contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 9 at 12-25.) Specifically, Jenkins argues that the ALJ erred by failing to follow the treating physician rule, improperly evaluating his credibility, and relying on flawed vocational expert (VE) testimony, and that the Appeals Council failed to consider new and material evidence. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 14 at 6-16.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 9 at 1-12; Dkt. No. 14 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a

full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Treating Physician Rule

With respect to the ALJ's RFC determination, Jenkins first argues that it is not supported by substantial evidence because the ALJ improperly evaluated the opinion evidence. (Dkt. No. 9 at 12-19.) Specifically, Jenkins contends that the opinions of his treating sources, physician's assistant Raju Sadal and Dr. Priyadarshan Bajpayi, should have been given controlling weight. (*Id.*) The Commissioner asserts that the ALJ's determination is supported by substantial record evidence, and that he properly weighed the evidence in assessing Jenkins' RFC. (Dkt. No. 14 at 6-10.) The court agrees with the Commissioner.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence,"

including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R.

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

§ 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

Here, the ALJ gave "little probative weight to the opinions expressed by Dr. Bajpayi[3] and Mr. Sadal," because their assessment of Jenkins' limitations in his ability to understand simple instructions, maintain concentration and attention, appropriately interact with others, and respond to changes in the workplace were inconsistent with other medical records.[4]

---

[3] Although Jenkins contends that the report from Sadal and Dr. Bajpayi should be given controlling weight as a treating source opinion, as the ALJ notes, the relevant treatment records do not indicate that Dr. Bajpayi ever treated or examined Jenkins. (Tr. at 39-40.) Further, Sadal, as a physician's assistant, is not an "acceptable medical source" that would be entitled to controlling weight, and thus his opinion is weighed along with the other sources of record according to the applicable factors. *See* 20 C.F.R. §§ 404.1513, 404.1527.

[4] The ALJ also gave "no weight" to Dr. Bajpayi's opinion that Jenkins "remains disabled," (Tr. at 503), because there is no indication that Dr. Bajpayi himself ever treated or examined Jenkins, and the determination of whether a claimant is disabled is an issue reserved for the Commissioner, and thus such opinions are not entitled to controlling weight. (*Id.* at 39-40); *see* 20 CFR § 404.1527(e)(1); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

6

(Tr. at 40.) Further, the opinions were inconsistent with Jenkins' reported daily activities. (*Id.*) Specifically, while a psychiatric/psychological impairment questionnaire completed by Sadal, and cosigned by Dr. Bajpayi, indicated that Jenkins had marked limitations in his ability to accept instructions, maintain socially appropriate behavior and basic standards of cleanliness, and respond appropriately to changes in the workplace, (*id.* at 461-71), these opinions are contradicted by other substantial evidence in the record.

For example, other records and progress notes from Vitality Physicians Group, including those from Sadal, showed that Jenkins was calm and cooperative, with normal affect and levels of attention, concentration, and judgment, and that Jenkins' grooming and hygiene were normal. (*Id.* at 474, 479, 481, 482, 488-89, 492.) Jenkins reported that his medication controlled his anxiety, depression, and mania. (*Id.* at 474.) A consultative examiner reported that Jenkins' manner of relating was adequate, his attention and concentration were intact, and he was able to follow and understand simple instructions and perform simple tasks independently. (*Id.* at 305-06.) In addition, Jenkins' description of his daily activities reflects his abilities to sustain attention and concentration while

watching television, driving, and doing chores, and appropriately interact with others during medical appointments and vacations. (*Id.* at 37-38, 57-60.)

Thus, the opinions provided by Dr. Bajpayi and Sadal are inconsistent with other substantial evidence of record, and the ALJ did not err in giving them less than controlling weight regarding Jenkins' RFC and his ability to work. 20 C.F.R. § 404.1527(c)(2); *see Halloran*, 362 F.3d at 32. In sum, the weight afforded to the various opinions by the ALJ, for reasons which are fully articulated in his written decision, is supported by substantial evidence. (Tr. at 34-40.) The ALJ also undertook a thorough discussion of the medical and testimonial evidence of record, which supports his determination that Jenkins was capable of unskilled work with only occasional decision making, changes in work setting, or interaction with others. (*Id.*) As such, the court affirms the ALJ's RFC determination.

**B.   Credibility**

Similarly, Jenkins next argues that "[t]he ALJ's findings were insufficient to find [him] not credible." (Dkt. No. 9 at 19-22.) In response, the Commissioner asserts that the ALJ's credibility determination is supported by substantial evidence. (Dkt. No. 14 at 10-12.) The court again

agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Jenkins' impairments "could reasonably be expected to cause the alleged symptoms," but found that Jenkins' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 37.) As cited by the ALJ, the record contains "little evidence" substantiating Jenkins' claimed disabilities. (*Id.* at 38.) Although Jenkins claimed that he was experiencing symptoms of mania at or around his alleged onset date of April 6, 2009, (*id.* at 64-65), contemporaneous treatment notes do not indicate any complaints of symptoms of mania; his first mention of a manic episode was not until over two years later. (*Id.* at 241, 363.) After a mental status evaluation shortly after Jenkins' alleged onset date, he was found to be "well groomed and appropriate," and fully oriented to person, place, and time. (*Id.* at 272.) He was instructed by his treating practitioner to return if his alleged symptoms persisted or changed, and he did not return for several months. (*Id.* at 271-72.) When using his medications, Jenkins' mood was stabilized, and he denied anxiety and panic attacks. (*Id.* at 488-89, 492.)

In addition, the ALJ found that Jenkins' failure to comply with medical advice to quit smoking and reduce his caffeine consumption detracted from

his overall credibility.[5] (*Id.* at 39.) The ALJ properly considered the fact that Jenkins declined recommended treatment as evidence that his symptoms are not as severe as alleged. *See* SSR 96-7p, 61 Fed. Reg. at 34,487 (explaining that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Moreover, Jenkins was not entirely forthcoming regarding his substance abuse problems. At his hearing, when asked to explain his treating sources' references to substance abuse, Jenkins indicated only that he took more than the recommended dose of Ativan. (Tr. at 61.) However, the record indicates that Jenkins also had used opiates and overused other prescribed medications, and that he had a history of alcohol and illegal substance abuse, which he did not disclose at his hearing. (*Id.* at 396, 473.) Thus, after expressly laying out the applicable regulations and the relevant factors, the ALJ made a credibility determination which is supported by substantial evidence in the record. (*Id.* at 36-39.)

## C. Vocational Expert Testimony

---

[5] Jenkins makes an inapposite argument that the ALJ made insufficient findings to deny benefits on the basis of Jenkins' non-compliance with treatment recommendations. (Dkt. No. 9 at 21-22.) As the Commissioner points out, it is not the case that the ALJ determined Jenkins to be not disabled as a result of his non-compliance with treatment, but only that Jenkins' failure to abide by prescribed treatment "detracts from [his] credibility." (Tr. at 39.)

11

Next, Jenkins asserts that the ALJ's step five determination is unsupported by substantial evidence because the VE's opinion, which the ALJ relied on, was based on a hypothetical that failed to account for all of Jenkins' functional limitations. (Dkt. No. 9 at 22-24.) Specifically, he alleges that the ALJ's errors in assessing his RFC and credibility, along with a failure to explicitly include in the hypothetical question the moderate limitations articulated by the ALJ in the context of the step three listing inquiry, fatally undermine the step five determination. (*Id*.) As discussed above, however, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence. As such, the ALJ's reliance on the VE's testimony was appropriate, as the hypothetical posed was supported by the record. (Tr. at 34-40, 41-42, 70); *see Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the [VE] that was based on that assessment.").

Although the hypothetical question did not include a recitation of the limitations mentioned by the ALJ in his step three determination that Jenkins' impairments did not meet one of the listed impairments, (Tr. at 32-

34), it appropriately encompassed the restrictions contained in the ALJ's RFC analysis, in that the ALJ asked the VE if there were any occupations that a claimant with "the same age, education, and work experience as [Jenkins]," with an RFC "[l]imited to unskilled work, with only occasional decision making, or changes in work setting, or interaction with others," could perform. (*Compare* Tr. at 34, *with id.* at 70.) As such, the ALJ's step five determination was free of legal error and is supported by substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE).

D. **Consideration of New and Material Evidence**

Finally, Jenkins claims that the Appeals Council's failure to consider new and material evidence that he submitted following the ALJ's decision requires remand. (Dkt. No. 9 at 24-25.) The court disagrees.

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.976(b)(1); *see Perez*, 77 F.3d at 45. The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or

conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).  However, even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence."  *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted).  Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court.  *Id*. at 45-46.

Here, following issuance of the ALJ's decision, but prior to a determination by the Appeals Council, Jenkins submitted additional records from Dr. Ronald Sherman, dated April 26, 2013, indicating numerous symptoms including mood disturbance, manic syndrome, recurrent panic attacks, and generalized anxiety.  (Tr. at 6-18.)  The Appeals Council reviewed Dr. Sherman's examination report and concluded that it "is about a later time" than the period relevant to the ALJ's determination, and that it "does not affect the decision about whether [Jenkins was] disabled" during the relevant time period.  (*Id.* at 2.)

The Appeals Council did not err in refusing to remand the case to the ALJ based on this new evidence provided by Jenkins.  Dr. Sherman's

14

report was not submitted with any additional treatment notes, and in fact indicates that the date of his first treatment of Jenkins was April 26, 2013, the same date of the report itself. (*Id.* at 6.) Further, although Dr. Sherman identifies several symptoms and clinical findings with respect to Jenkins' mental health, and concludes that he is "incapable of even 'low [work] stress,'" (*id.* at 12), as further discussed above, contemporaneous treatment notes regarding Jenkins' condition, and the extent of Jenkins' daily activities, refute such conclusions. In sum, Dr. Sherman's opinion was not deserving of controlling weight because it was contradicted by substantial evidence of record and unsupported by relevant medical signs and findings. *See* 20 C.F.R. § 404.1527(c)(3), (4). Although Jenkins argues that Dr. Sherman's report "creates a reasonable probability of changing the ALJ's decision," (Dkt. No. 9 at 25), "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).

Based on the foregoing, the court concludes that the Appeals Council properly determined that the new evidence submitted by Jenkins did not

15

affect the validity of the ALJ's decision. See 20 C.F.R. § 404.1527(c)(3)-(6); *Perez*, 77 F.3d at 45 ("When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner].").

E. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it correctly applies the relevant legal standards and is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Jenkins' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 19, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court